UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| MARIA FABIOLA DIAZ PATINO,<br><br>　　Petitioner,<br><br>v.<br><br>MARCELLO VILLEGAS, et al.,<br><br>　　Respondents. | No. 1:25-CV-276-H |

# ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Maria Fabiola Diaz Patino, a native and citizen of Venezuela, is one such alien, having illegally entered the United States in 2021. Her habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either her release or a bond hearing based on the text of the INA and the Fifth Amendment's Due Process Clause. Dkt. No. 1.

In light of *Buenrostro-Mendez*, only Diaz Patino's due process claim remains. But due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Diaz Patino are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

1.   **Background**

In 2021, Diaz Patino was detained while illegally crossing into the United States near Eagle Pass, Texas. Dkt. No. 8 at 4. Amidst a wave of illegal entries across the Texas border and a resulting lack of space to hold detainees, ICE released Diaz Patino into the United States. *Id.* Almost a year later, while residing in Florida, she applied for asylum. *Id.* at 14. Around that time, Diaz Patino was placed into removal proceedings with a Notice to Appear. *Id.* at 4. The Notice to Appear charged her with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Secretary of Homeland Security." *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i). ICE later detained Diaz Patino in December 2025 and placed her in custody at the Bluebonnet Detention Center in Anson, Texas, where she has remained since. Dkt. No. 1 ¶ 47.[1]

Diaz Patino is held without bond and neither requested nor received a bond hearing. *Id.* ¶ 49. That is because the BIA's recent opinion in *Yajure Hurtado* holds that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. at 220.

---

[1] Venezuelan nationals in the United States were previously permitted to remain with Temporary Protected Status. The Northern District of California enjoined the Trump Administration's termination of TPS status for Venezuelan nationals, but the Supreme Court subsequently stayed the injunction. *Noem v. Nat'l TPS All.*, 606 U.S. ___, 146 S. Ct. 23 (2025). In January 2026, the Ninth Circuit affirmed the Northern District's decision. *See* ___ F.4th ___, 2026 WL 226573 (9th Cir. Jan. 28, 2026). But because the Supreme Court's stay remains in place until the "disposition of a petition for a writ of certiorari, if such writ is timely sought," the stay remains in place. 146 S. Ct. at 24.

Instead, Diaz Patino filed a petition for a writ of habeas corpus. Dkt. No. 1.[2] The petition states two claims for relief. First, Diaz Patino alleges that her detention without bond violates the INA. *Id.* ¶¶ 51–53. She argues that Section 1225(b)(2)(A) does not apply to aliens who, like her, previously entered the United States illegally and have been living in the country prior to being apprehended and placed in removal proceedings. *Id.* ¶ 41; *see id.* ¶ 52 (noting it also "does not apply to those who . . . have been residing in the United States after being released and placed in removal proceedings by [DHS]"). In Diaz Patino's view, the proper statutory authority for her detention is Section 1226(a), which permits IJs to release aliens on bond while their removal is pending. *Id.* Besides her statutory claim, Diaz Patino also contends that her detention without bond violates her due process rights. *Id.* ¶¶ 54–57.

The Court ordered the respondents to show cause why Diaz Patino's petition should not be granted. Dkt. No. 4; *see* 28 U.S.C. § 2243. The respondents timely answered (Dkt. Nos. 7; 8) and Diaz Patino replied (Dkt. No. 9).

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an

---

[2] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Diaz Patino's petition does not present an exhaustion problem. *Id.*

alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

2. **Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

3. **Analysis**

Diaz Patino raises two claims in her habeas petition—one involving Sections 1225 and 1226 of the INA, and another based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 51–57. As explained below, *Buenrostro-Mendez* forecloses Diaz Patino's statutory claim. Thus, the only claim left for consideration is her due process claim. The

Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[3] Even so, the Court considers the arguments raised in Diaz Patino's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

### A. *Buenrostro-Mendez* forecloses Diaz Patino's INA claim.

Diaz Patino concedes that she is an "applicant for admission" within the meaning of Section 1225(a)(1). Dkt. No. 9 at 4. That is correct. Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Diaz Patino is an "alien." She is "present in the United States." And she "has not been admitted" because she did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that she be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498. Thus, Diaz Patino's INA claim fails.[4]

---

[3] *Higareda-Cano v. Noem*, No. 1:25-CV-225, Dkt. No. 13 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

[4] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.3. Furthermore, the fact that Diaz Patino was released on a Form I-220A (*see* Dkt. No. 9 at 2–4) was not a form of admission. *See Goyo Martinez*, 2026 WL 114418, at *3–4, 7.

### B. The Due Process Clause does not require the government to give Diaz Patino a bond hearing.

Next is Diaz Patino's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 54–57. Diaz Patino argues that she "has a fundamental interest in liberty and being free from official restraint" and that her detention "without a bond redetermination hearing to determine whether she is a flight risk or danger to others violates her right to due process." *Id.* ¶¶ 56–57. She does not clarify whether her challenge is based on substantive or procedural due process. But either way, she is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that

"detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Diaz Patino has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding her application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Diaz Patino's claim relies instead on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 9 at 9–10. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7

(N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

In response, Diaz Patino relies on a recent district court decision that reached the opposite conclusion. In *Lopez-Arevelo v. Ripa*, the Western District of Texas distinguished *Thuraissigiam* as a case regarding due-process rights in matters of deportation, as opposed to detention. 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). That court also cited the decisions of several circuit courts that analyzed Section 1226-based due-process claims. *Id.* at 683. On that reasoning, it applied *Mathews* and ordered the petitioner's release. *Id.* at 685–88. But *Lopez-Arevelo* is unpersuasive for several reasons.

First, *Lopez-Arevelo*'s characterization of *Thuraissigiam* is almost the reverse of the Supreme Court's reasoning and holding. True, the *Thuraissigiam* petitioner did not seek "release from custody." 591 U.S. at 115. He sought only to secure further opportunity for immigration relief. *Id.* But the Court denied the petitioner's due process claim in reliance on "more than a century of precedent." *Id.* at 138. Unsurprisingly, that long legal tradition, which *Lopez-Arevelo* does not address, rested upon aliens seeking release from detention. *See, e.g.*, *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) (recognizing the baseline requirements and limits of habeas corpus for unadmitted aliens). Far from suggesting a divergence, *Thuraissigiam* reinforced a longstanding tradition that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." 591 U.S. at 139 (quoting *Landon*, 459 U.S. at 32). That includes detention as much as it includes the underlying deportation proceeding.

Second, and relatedly, recent Supreme Court precedent suggests pre-removal detention cases are cut from the same cloth as *Thuraissigiam*. In *Demore*, the Supreme Court reasoned that "deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'" 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). It therefore upheld a petitioner's mandatory detention "for the limited period of his removal proceedings" under Section 1226(c). *Id.* at 531. Congress provided process, and the petitioner in that case was not due anything more.

Third, the *Lopez-Arevelo* court errs in suggesting that due process is distinguished by "place—not status." 801 F. Supp. 3d at 684; *Ochoa v. Vergara*, ___ F. Supp. 3d ___, No. 1:26-CV-266, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (same). That suggestion

cannot be squared with *Thuraissigiam*, which makes clear that "place" is not the relevant consideration and dismissed place-based distinctions as rendering the traditional admission-based system of due process for aliens "meaningless." 591 U.S. at 139. "On the contrary," it said, "aliens who arrive at ports of entry—even those paroled elsewhere in the country *for years* pending removal—are treated for due process purposes as if stopped at the border." *Id.* (emphasis added) (internal quotation marks omitted).

Fourth, the case law upon which *Lopez-Arevelo* relies provides no persuasive reasoning in its favor. Only one of the circuit cases on which it relies provides its reasoning for applying the *Mathews* factors, and even that decision fails to consider the Supreme Court's emphasis on limited process articulated in *Thuraissigiam*, *Landon*, *Demore*, and many other cases. *Black v. Decker*, 103 F.4th 133, 147–51 (2d Cir. 2024) (adopting *Mathews* because of the consensus of other circuits and the Supreme Court's application of *Mathews* outside of the immigration context). In light of these considerations, *Lopez-Arevelo* fails to persuade.

Here, Diaz Patino was released into the United States pending removal just a few years ago. Her release was not an admission into the country, and she remains in the United States without admission. Therefore, she is entitled to nothing more than the "limited form of process" that is offered by the respondents under their current deportation policy. *Ladak*, 2025 WL 3764016, at *7. With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Diaz Patino is not entitled to a bond hearing as a matter of procedural due process.[5]

**4.   Conclusion**

In short, Diaz Patino, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). Nothing about the INA or the Due Process Clause requires a contrary conclusion. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on March 9, 2026.

                                                           JAMES WESLEY HENDRIX
                                                         UNITED STATES DISTRICT JUDGE

---

[5] One of the cases cited in *Lopez-Arevelo* concludes that a bond hearing is necessary "when detention becomes unreasonable." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020) (Bibas, J.) (quotation omitted). There, the petitioner was held without bond "for more than two-and-a-half years." *Id.* at 206. Diaz Patino's detention is recent, so even assuming a heightened degree of process is appropriate in long-term detention cases, it is not warranted here.